16 P.3d 906

Misty Lee KIRK, Claimant–Appellant,

v.

KARCHER ESTATES, INC., dba Life Care Center of Nampa, Employer, and Birmingham Fire Insurance Company of Pennsylvania, Surety, Defendants–Respondents.

No. 25634.

Supreme Court of Idaho, Boise, November 2000 Term.

Dec. 15, 2000.

John F. Greenfield, Boise, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Katrina Terese Sather argued.

SCHROEDER, Justice.

Misty Lee Kirk (Kirk) appeals from the decision of the Industrial Commission (the Commission) rejecting her worker's compensation claim for medical benefits.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Kirk was injured on June 5, 1997, while employed as a certified nurse's assistant (CNA) with Karcher Estates, Inc. when she was running with a fire extinguisher to put out a small fire. Kirk had to stop abruptly when a fire door closed in front of her. She felt a sharp pain in her left knee when she stopped. She continued on and put out the fire but had a noticeable limp following the accident. At the time of the accident Kirk was 21 years old, was 5'3" and weighed 200 pounds.

Kirk filed a worker's compensation claim and was examined by various doctors who worked for Karcher Estates. Initially, she was treated by Dr. Hlavinka, a family practitioner. Dr. Hlavinka determined she had suffered a patellar subluxation, partial dislocation of the knee. Dr. Hlavinka treated the injury with a knee brace, physical therapy, and pain medication. He also restricted her job duties. A month after the accident, Dr. Hlavinka determined Kirk's knee had returned to normal and that she had responded well to an increased workload. Dr. Hlavinka released Kirk to full work duties with only one more round of physical therapy.

Shortly after returning to a full work schedule, Kirk left Karcher Estates. She was unable to lift because of her knee, resulting in co-worker complaints about her performance. Kirk then worked as a CNA for Vencore, but she left that position because it was too painful for her to bend her knee. Kirk's last employment position was as a hostess on a "fun bus." However, she resigned from this job because the long hours of standing were too painful.

Approximately nine months after the accident, Kirk visited Dr. Martin, a family practitioner. Dr. Martin reviewed Kirk's medical record, conducted a physical exam, and ordered an MRI which revealed a posterior tear of the medial meniscus cartilage and a thickening in the area of the anterior cruciate ligament (ACL), indicating a partial tear or chronic tear. Dr. Martin referred Kirk to Dr. Wynder, an orthopedic specialist. Dr. Wynder determined there was a tear in the meniscus, which was the cause of Kirk's pain and that surgery was required to repair the tear, but surgery was not urgent unless the knee affected her employment.

Kirk has continually complained of intermittent twinges of pain in the knee, locking or buckling, swelling, and other various problems. She claims she is unable to walk for more than a few steps before her knee hurts and she has to sit down. Since the accident, Kirk's inability to walk or remain active has caused her to gain a significant amount of weight.

Karcher Estates' surety, Birmingham Fire Insurance Company of Pennsylvania (Birmingham), had paid all of Kirk's medical expenses related to the accident through her MRI and Dr. Wynder's exam. Kirk then requested medical benefits to pay for arthroscopic knee surgery and to repair the torn meniscus, but Birmingham denied her request. Kirk filed a complaint with the Commission. The referee determined the accident was a possible but not the probable cause of the knee injury based on an opinion given by Dr. Wynder. The Commission agreed and adopted the referee's findings, denying Kirk medical benefits because the accident was not the probable cause of her meniscus tear. Kirk filed a motion to recon-

sider with the Commission, claiming their original findings regarding Dr. Wynder's various opinions were erroneous. The Commission denied the motion. Kirk appealed the ruling to this Court.

## II.

## STANDARD OF REVIEW

██ The standard of review for appeals from the Industrial Commission is two-fold. This Court will exercise free review over the Commission's legal conclusions, but it will not disturb the Commission's factual findings if they are supported by substantial and competent evidence. *See Vargas v. Keegan, Inc.,* 134 Idaho 125, 997 P.2d 586 (2000); *see also Reiher v. American Fine Foods,* 126 Idaho 58, 60, 878 P.2d 757, 759 (1994) (citations omitted). Substantial and competent evidence consists of such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Idaho State Ins. Fund v. Hunnicutt,* 110 Idaho 257, 260, 715 P.2d 927, 930 (1985). The substantial evidence rule requires a court to determine whether the agency's findings of fact are reasonable. *Id.* (citing *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346 (1978)). In deciding whether the agency's findings of fact were reasonable, reviewing courts should not read only one side of the case and, if they find any evidence there, sustain the administrative action and ignore the record to the contrary. *Id.* (citing *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456, 461 (1951)).

## III.

## THE COMMISSION'S FINDINGS OF FACT ARE SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE.

██ The question before this Court is whether reasonable minds could accept the Commission's finding that the accident was not the probable cause of Kirk's torn meniscus. Specifically, Kirk contests the Commission's finding number 21, which states:

21. At his deposition, Dr. Wynder opined that it was possible Claimant's medial meniscus tear was related to her June 5, 1997, accident, but not probable....

The problem is that Dr. Wynder rendered two conflicting opinions regarding causation during his deposition, and the outcome of the Commission's decision turned on which opinion the Commission believed. The opinion Kirk argues is more truthful states, in part:

Q. Is that opinion based on a reasonable medical probability?

A. Yes.

....

Q. What is your opinion, sir?

A. My opinion would be that her current condition would be related to the injury of June 1997.

The opinion the Commission determined was more reliable states:

Q. Doctor, if you assume that Dr. Hlavinka's records are accurate in terms of what Ms. Kirk told him and in terms of his examination and observations, i.e. that she had tenderness of the patella, that there was no effusion, that she essentially had full range of motion and her knee was, quote, normal—back to normal at the time he released her, would you ... using those assumptions, would you have an opinion as to the relationship of her present diagnosis, i.e. the medial meniscus tear and its relationship to the accident....

A. Yes, I would have an opinion. In that case I would say that it's possible that her current condition relates to that injury in June of '97, but not probable.

Kirk contends that the Commission should not have relied on the second opinion because it was a response to a hypothetical posed by the defense. However, the first opinion was also a response to a hypothetical. The difference between the two responses is based on the assumptions which each party posed in the hypothetical questions. Kirk asked Dr. Wynder to assume Kirk "never had another accident and that the incident ... involving carrying a two year old down some stairs was an example of the kinds of aggravations she had suffered off and on since her injury in June 1997, that there wasn't any huge new

accident on that day." Karcher Estates asked Dr. Wynder to assume that Dr. Hlavinka's medical records were accurate and to base his opinion regarding causation on his exam and those medical records.

Sufficient evidence in the record supports the Commission's findings. Dr. Wynder's opinion, which the Commission relied on, is consistent both with his initial findings in his report after examining Kirk and his letter to Birmingham relating to causation. Certainly the evidence in this case is subject to different interpretations than that adopted by the Commission. Nonetheless, under the standard of review this Court must apply there is substantial, competent evidence to support the Commission's findings.

## IV.

### THE COMMISSION DID NOT ABUSE ITS DISCRETION IN DENYING KIRK'S MOTION FOR RECONSIDERATION.

In its order denying Kirk's motion for reconsideration the Commission made the following statement:

> Dr. Wynder provided two opinions in his deposition. Claimant asks the Commission to rely on the opinion...which was based on hypothetical facts as Claimant's counsel presented them rather than the opinion that the Commission relied upon which was based on his physical examination of the Claimant, the time factor, and a review of Claimant's medical records and history.

Additionally, the Commissioners stated that they had "conducted a thorough review of the evidence in this case before rendering its original decision, and has again done so after receiving Claimant's Motion to Reconsider," and further that "adequate evidence in the record supported the Commission's reliance on Dr. Wynder's opinion which was stated to a reasonable degree of medical probability and was based on medical evidence."

Kirk argues that the Commission's statement that Dr. Wynder's opinion "was stated to a reasonable degree of medical probability and was based on medical evidence" is erroneous. Kirk also argues that the Commission failed to consider, and in fact did not read the deposition of Dr. Wynder, because, if it had, it would have relied on the opinion stating that the accident "probably" caused Kirk's torn meniscus. The Commission's order denying the motion for reconsideration states that it reviewed the entire record prior to its initial decision and again prior to deciding the motion for reconsideration. There is no basis for the Court to disbelieve the Commission's statement. Kirk's assertion is made solely upon the premise that since the Commission believed the second opinion of Dr. Wynder it must not have read the deposition. This argument is unpersuasive.

Kirk further argues the Commission erred in applying an appellate standard of review to the motion to reconsider and asks this Court to clarify Idaho Code section 72-718, which states:

> **Finality of commission's decision.**—A decision of the commission, in the absence of fraud, shall be final and conclusive ..., within twenty (20) days from the date of filing the decision any party may move for reconsideration or rehearing of the decision, ..., and in any such events the decision shall be final upon denial for a motion for rehearing or reconsideration or the filing of the decision on rehearing or reconsideration.

In this case, the Commission adopted the referee's findings and conclusions in their entirety following a review of the record. It reviewed the record again before denying the motion for reconsideration. There is no showing it applied the wrong standard of review.

## V.

### CONCLUSION

The decision of the Commission is affirmed. The respondents are awarded costs. No attorney fees are allowed.

TROUT, C.J., WALTERS, KIDWELL, JJ., and J. Pro Tem BAIL concur.