27 P.3d 410

Rick A. QUINCY, Claimant–Respondent,

v.

Allen QUINCY, Employer, and Associated Loggers Exchange, Surety, Defendants–Respondents,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant–Appellant.

No. 26049.

Supreme Court of Idaho, Boise, January 2001 Term.

June 25, 2001.

2

Alan G. Lance, Attorney General, Boise; Mallea & Scrivner, Boise, for appellant. Kenneth L. Mallea argued.

Mitchell Law Office, Coeur d'Alene; Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Glenna M. Christensen argued.

KIDWELL, Justice.

The State of Idaho, Industrial Special Indemnity Fund ("ISIF"), appeals the Industrial Commission decision apportioning liability to the ISIF for injuries suffered by the claimant, Rick Quincy.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Rick Quincy (Claimant), spent his entire life in the small rural community of Emida, Idaho, performing logging work. Claimant's medical problems began in 1976 when, at the age of 17, he was involved in a motorcycle accident. Claimant underwent several surgeries, and eventually ended up with a limp and stiff ankle, osteoporosis, and a right leg one half-inch shorter than his left leg. After his recovery, Claimant returned to work as a logger for his father.

Claimant later suffered four industrial accidents including an injury to his right ankle on April 23, 1991, an injury to his back on January 2, 1992, an injury to his right calf on August 1, 1992, and an injury to his right ankle on January 24, 1994.

Claimant filed a complaint against the employer on April 2, 1996, in regard to the April 23, 1991, injury to his right ankle. Allen Quincy, Claimant's father (Employer), is the employer in this case. On May 22, 1997, Claimant filed a complaint against the ISIF. The Industrial Commission consolidated four open and pending worker's compensation claims involving Claimant on June 5, 1997. The parties stipulated that Claimant is totally and permanently disabled.

Claimant's pre-existing impairment was addressed at a hearing held on June 9, 1998. Dr. Baines, Claimant's treating physician, assigned a 28% whole person impairment rating for Claimant's ankle condition. He testified that the majority of the ankle condition, or 90%, was attributable to the 1976 motorcycle accident and injury. Therefore, he apportioned 90% of the 28% impairment rating, or 25.2%, to the 1976 accident. Dr. Baines then apportioned 6% of the 28% rating (1.68%) to the first industrial accident in 1991, 2% of the 28% rating (.56%) to the third industrial accident in 1992, and 2% of the 28% rating (.56%) to the fourth accident in 1994. The referee added a small additional rating of .3% to Claimant's pre-existing impairment, finding that Claimant suffered an impairment of 25.5% due to his pre-existing condition.

Next, the Claimant's 1991 ankle injury was addressed. The referee determined that the first injury was an industrial accident that accelerated Claimant's pre-existing degenerative condition because it further damaged already damaged cartilage, it altered the mechanics of how Claimant's foot worked, it shortened Claimant's gait, and worsened the extent of Claimant's pain.

Dr. Baines testified that Claimant's 1991 injury was the most serious ankle injury that the Claimant suffered and assigned a 1.68% rating based upon loss of range of motion. The referee increased the impairment rating slightly to 2% due to an increased gait derangement after 1991 and for increased pain as a functional loss.

The referee found that Claimant became medically stable as to this injury on May 10, 1991, after his cast was removed and Dr. Pike returned him to work. Further, the referee noted, "Claimant suffered a permanent partial disability of 70% of the whole person as a result of the 1991 injury." This finding is one of the key subjects of this appeal.

In regard to the 1992 back injury, the referee assigned a 2% impairment rating based upon complaints of chronic back pain following the injury. The referee found the date of medical stability for this injury to be on April 13, 1992, when Claimant was released to return to work. The referee found that Claimant became totally and permanently disabled on April 14, 1992, the day after he was released to return to work. The referee determined that even though Claimant returned to work, he was handicapped at that point.

The referee found that Claimant did not suffer a permanent physical impairment from his bruised calf. Claimant did not dispute this conclusion.

Finally, the referee assigned a .5% impairment rating to the 1994 ankle injury based upon credible complaints of pain.

Ultimately, the referee concluded that Claimant suffered a permanent physical impairment rating of 30% of the whole person as a result of his pre-existing condition and industrial injuries. Claimant suffered permanent impairments of 25.5% of the whole person due to the 1976 motorcycle accident, 2% of the whole person for his 1991 ankle injury, 2% of the whole person for his 1992 back injury and .5% whole person impairment due to the 1994 ankle injury.

Claimant was totally and permanently disabled beginning April 14, 1992. The 1994 ankle injury arose after this date and consequently was not a pre-existing permanent physical impairment for purposes of apportionment. The effects of this injury were not included in the disability evaluation as related to the 1992 back injury. However, Claimant was entitled to benefits for a .5% whole person impairment equaling $495.00.

Of the remaining 29.5% physical impairment, non-medical factors accounted for 70.5% of his total disability and were apportioned between the defendants in proportion to their respective percentages of responsibility for the physical impairment. The referee applied the *Carey*[1] formula and determined that the ISIF was responsible for 93.22% (25.5% + 2% = 27.5% / 29.5%) of Claimant's total disability due to medical factors, or 27.5% (29.5% × 93.22%); the ISIF was also responsible for 65.72% (93.22% × 70.5%) due to non-medical factors, for a total of 93.22% liability. The total responsibility of Employer under the *Carey* formula was 6.78% (6.78% × 70.5% = 4.78% + 2%) or benefits for a period of 33.9 weeks.

Employer/surety moved for reconsideration to correct, add, and delete the findings of fact and conclusions of law on April 29, 1999. Employer argued that the Commission's decision was incorrect because the portion of the decision pertaining to ISIF apportionment was ambiguous. Employer sought a conclusion of law stating that Claimant's total permanent disability is apportionable between the employer and ISIF pursuant to I.C. § 72–332. Employer argued that the finding that Claimant was 70% disabled as a result of the 1991 injury should be deleted and that the Commission should simply apply the *Carey* formula without the finding of 70% disability.

On May 10, 1999, the ISIF also moved for reconsideration of the Commission's findings of fact and conclusions of law. The ISIF argued that it should be given credit for the 70% disability associated with the 1991 injury. According to the ISIF, the 1991 ankle injury was not a pre-existing condition, so any disability associated with it should be apportioned solely to Employer.

On October 19, 1999, the Commission entered an order amending the decision and denying reconsideration. The Commission declined to change its findings, noting that under *Carey*, in order to exclude an impairment rating from the apportionment analysis, it must be impairment for an injury that was not stable and ratable on the date of the subsequent injury which rendered claimant totally and permanently disabled. Such an injury would not be considered pre-existing against the ISIF. In this case, the 1991 injury pre-existed the 1992 injury for purposes of ISIF liability—the 1991 condition was stable and ratable before the 1992 injury.

The Commission declined to remove the 70% disability finding due to the 1991 injury,

1. *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 686 P.2d 54 (1984).

instead opting to order Employer to pay its proportionate share of the disability for the 1991 injury. The Commission found, "Claimant's 1991 injury was stable and ratable at the time of the 1992 low back injury. The claim for benefits for the 1991 injury is an open, unresolved, viable claim. The Commission finds Employer is liable for the disability of the 1991 injury." Employer was only liable for the additional disability resulting from the industrial injury. The Commission found Employer liable for 15% disability inclusive of the 2% impairment attributable to the 1991 injury.

The ISIF timely appealed the Commission's decision and order dated April 28, 1999, and its order amending decision and denying reconsideration filed on October 19, 1999.

## II.

### STANDARD OF REVIEW

In *Smith v. J.B. Parson Co.*, 127 Idaho 937, 908 P.2d 1244 (1996), this Court observed:

> While the Commission's apportionment of disability is a question of fact, which will not be overturned if it is supported by substantial and competent, although conflicting evidence, a challenge to the Commission's application of a statute is a question of law over which this Court exercises free review.

*Id.* at 943, 908 P.2d at 1251 (internal citations omitted).

## III.

### ANALYSIS

A. THE COMMISSION'S DETERMINATION THAT THE 1991 ANKLE INJURY WAS A PRE–EXISTING IMPAIRMENT UNDER I.C. § 72–332 WAS SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE.

■ Idaho Code § 72–332 governs ISIF liability for total and permanent disability benefits. *Toelcke v. State, Indus. Special Indem. Fund,* 134 Idaho 491, 493, 5 P.3d 471, 473 (2000). This provision provides:

(1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

(2) "Permanent physical impairment" is as defined in section 72–422, Idaho Code, provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment.

I.C. § 72–332.

The above-mentioned code section notes that the definition for permanent physical impairment found in section 72–422 applies. This section notes:

> "Permanent impairment" is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. Permanent impairment is a basic consideration in

the evaluation of permanent disability and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability.

I.C. § 72–422.

■ This Court has articulated a four-prong test that must be satisfied in order to apportion liability to the ISIF: 1) a pre-existing physical impairment must exist; 2) the impairment must have been manifest; 3) the impairment must have constituted a subjective hindrance to obtaining employment; 4) the impairment must combine with the industrial injury to render the claimant totally and permanently disabled. *Toelcke*, 134 Idaho at 493, 5 P.3d at 473 (quoting *Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 154, 795 P.2d 312, 316 (1990).

It is important to note that the first prong of the test involves the determination that a pre-existing impairment exists. This Court has previously examined what constitutes a pre-existing impairment in the context of apportionment among employers and the ISIF. *Smith*, 127 Idaho at 937, 908 P.2d at 1244.

In *Smith*, this Court examined a claim for total permanent disability benefits from a claimant, Smith, who suffered from two industrial accidents and two non-work-related injuries. *Id.* Smith's main injury occurred when his finger was partially amputated in an industrial accident that he suffered on January 22, 1988, while he was employed for Parson. *Id.* at 939, 908 P.2d at 1246. Smith's finger injury did not reach medical stability until June 15, 1992, after the entire finger was amputated. *Id.* at 943, 908 P.2d at 1250.

Smith experienced a second industrial accident around January 16, 1990, when he injured his back while employed by ISIH, a different employer. *Id.* at 939, 908 P.2d at 1246. Smith suffered his first non-work-related condition in 1959, when he injured his eye in an automobile accident and his second non-work-related condition involved a rare blood disorder that Smith was diagnosed with in August 1989. *Id.*

In regard to apportionment, the referee in *Smith* determined that the ISIF, ISIH and Parson were all liable. *Id.* Smith's vision impairment and blood condition were each manifest pre-existing permanent physical impairments. *Id.* The referee determined that the ISIF was not liable for the finger injury as it was not a pre-existing impairment, in spite of the fact that it existed and manifested itself prior to Smith's 1990 industrial injury. *Id.* The referee reached this conclusion because "Smith's claim for benefits ... was an open, unresolved and viable claim at the time of Smith's 1990 back injury, such that it did not constitute a pre-existing injury under the worker's compensation statutes." *Id.* Parson was found to be liable for the permanent disability in excess of impairment caused by the industrial accident. *Id.*

On appeal, this Court determined that the referee correctly concluded that the finger injury was not a pre-existing injury. *Id.* at 942, 908 P.2d at 1249. The Court noted:

The Commission's conclusion is supported by the fact that Smith's disability and Parson's liability due to the finger injury had never been determined prior to Smith's 1990 back injury. Smith's subsequent back injury, which occurred prior to the final determination of Smith's disability due to the 1988 finger injury, does not dismiss Parson from liability....

*Id.* at 943, 908 P.2d at 1250.

In the case currently before the Court, the referee discussed how Claimant's ankle injury met the four-part test required for ISIF apportionment. The referee found that Claimant's ankle condition both before the 1991 injury and after the 1991 injury was manifest, a subjective hindrance to employment, and combined with the 1992 back injury to render him totally and permanently disabled. The referee then distinguished this case from *Smith* by noting that in *Smith*, there were two employers, where here there is only one. Additionally, in this case, "claimant's ankle condition from his motorcycle accident became stable and ratable *before* the 1991 injury and the 1991 ankle condition became stable and ratable *before* the 1992 back injury. Thus, those injuries constitute pre-existing impairments pursuant to Idaho Code § 72–332 for the purpose of apportioning liability to the ISIF and should be included in the *Carey* formula."

■ We find that the Industrial Commission's decision that the 1991 ankle injury was a pre-existing condition is supported by both the code provisions and the case law. Idaho Code § 72–332 addresses pre-existing permanent physical impairments. It notes that a permanent physical impairment can be "from any cause or origin." I.C. § 72–332(1). This language indicates that a pre-existing impairment can result from a previous industrial accident in which the employer and the ISIF shared liability.

Idaho Code § 72–332(2) describes a permanent physical impairment as "a permanent condition ... of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the claimant should become employed." Additionally, I.C. § 72–422. describes permanent impairment as "any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or progressive at the time of evaluation." *Id.* The Industrial Commission's findings reflect the presence of these key factors.

Like the claimant in *Smith*, the claimant in this case suffered a series of injuries, some more serious than others. In both cases, the employers were held responsible for the portion of the injury that was caused by the industrial accident. In the case of *Smith*, this was for the entire amount of disability attributed to the finger injury; in the case currently before the Court, Employer was held responsible for the amount of disability not attributed to the pre-existing impairments from 1976 and 1991. In both cases, the claim for the industrial accident was resolved before apportionment was determined and before a classification of "pre-existing impairment" could be made. However, unlike the claimant in *Smith*, Claimant's injury in this case was medically stable before the subsequent injury was incurred. Therefore, in this case the Commission was able to make a determination that the injury was ultimately pre-existing where the Commission could not make that determination in *Smith*.

Stability is a key factor to consider when determining if a pre-existing impairment exists. In considering the date of stability of Claimant's ankle condition and his disability attributable to the 1991 injury, the referee found, "Claimant became medically stable as to his first industrial injury on May 10, 1991, after his cast was removed and Dr. Pike returned him to work to see how he would do." It is important to note that this date is prior to January 2, 1992, the date Claimant suffered the next industrial accident. The date of stability distinguishes Claimant's ankle injury in this case from the finger injury suffered in *Smith*. Because Claimant's ankle injury became medically stable before he suffered the next injury, the Industrial Commission correctly concluded that the injury was a pre-existing impairment and the decision of the Commission is affirmed.

## B. THE COMMISSION DID NOT ERR IN APPORTIONING LIABILITY TO THE EMPLOYER FOR THE 1991 ANKLE INJURY.

■ In this case, the Commission determined that the employer was liable for 15% of the 70% disability attributable to the 1991 ankle injury. The Commission's order amending the decision noted:

[T]he 70% disability Claimant suffered as a result of the 1991 injury is to be apportioned so Employer is liable only for the additional disability from the industrial injury. It is clear from the record the pre-existing degenerative right ankle condition was accelerated by the 1991 injury.... Therefore, the Commission finds Employer liable for the 15% disability inclusive of the 2% impairment attributable to the 1991 injury.

The separate finding in which both the ISIF and the employer were allocated liability for the 70% disability due to the 1991 ankle injury was supported by substantial and competent evidence. In this case, there is only one employer involved. Consequently, because the 1991 ankle injury occurred on the job as an industrial accident, Employer should be held responsible for disability attributable to this injury.

The Commission took the approach that claims need to be resolved individually to a certain extent before liability as a whole can be apportioned. The employer's liability for the 1991 ankle injury needed to be measured based on the effect of the injury back in 1991. At that time, the claimant had not reached total permanent disability. The decision of the Industrial Commission is affirmed.

## C. THE COMMISSION CORRECTLY APPLIED THE *CAREY* FORMULA.

Idaho Code § 72–425, "Permanent disability evaluation," provides:

> "Evaluation (rating) of permanent disability" is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors as provided in section 72–430, Idaho Code.

I.C. § 72–425.

In *Carey*, this Court explored a worker's compensation claim for a worker who claimed total disability after suffering from both a pre-existing condition and an industrial accident. *Id.* at 109, 686 P.2d at 54. This Court determined that liability for non-medical factors should be apportioned between the employer and the fund in proportion to their respective percentages of responsibility for the physical impairment. *Id.* at 118, 686 P.2d at 63.

In this case, the Industrial Commission determined that permanent physical impairment totaled 30%. This amount was allocated among the injuries as follows: (1) 1976 motorcycle accident = 25.5%; (2) 1991 ankle injury = 2%; (3) 1992 back injury = 2%; (4) 1994 ankle injury = .5%.

The Commission then determined that Claimant was totally and permanently disabled beginning on April 14, 1992. Therefore, the 1994 ankle injury was not a pre-existing permanent impairment; instead it was to be allocated separately. Consequently, the .5% was deducted and Claimant was found to have physical impairments of 29.5% and non-medical factors totaling 70.5% of his total disability.

The amount was then apportioned, allocating 93.22% of the liability to the ISIF. This figure was reached by dividing 27.5% (the amount of impairment due to the pre-existing injuries) by 29.5% (the total amount of physical impairment). Ultimately, it was determined that the ISIF was responsible for 27.5% of the permanent physical impairment.

The ISIF was also liable for 65.72% of the non-medical factors. This figure was reached by multiplying 93.22% by the 70.5% figure representing the total amount of non-medical factors.

The Employer was deemed responsible for 6.78%, the figure representing the remaining portion of liability. When this figure was applied to the total amount of physical impairment (29.5%), the Employer received 2% of the liability for the permanent physical impairment. In regards to the 70.5% of non-medical factors, the Employer was responsible for 4.78%. The amount of liability apportioned to the Employer was the equivalent of benefits for a period of 33.9 weeks.

As noted previously, *Smith* is clearly distinguishable from the facts currently before the Court. Unlike Claimant in this case, the claimant in *Smith* suffered an injury that was not medically stable before the subsequent injury was incurred. Consequently, the finger injury in *Smith* was not a pre-existing impairment and should not have been figured into the *Carey* formula. Substantial and competent evidence supports the finding of the Industrial Commission that the 1976 injury and the 1991 injury were pre-existing impairments. Consequently, these were correctly figured into the *Carey* formula and the decision of the Industrial Commission is affirmed.

## IV.

### CONCLUSION

Substantial and competent evidence supports the finding of the Industrial Commission that the 1991 ankle injury was a pre-existing impairment and that Employer was liable for 15% of the 70% disability suffered by the Claimant for the 1991 ankle injury. In figuring the amount of liability to be

apportioned to the ISIF and Employer, the Industrial Commission correctly applied the *Carey* formula. The decision of the Industrial Commission is affirmed. No costs are awarded.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.