## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket N. 40749

KEVIN D. HOPE,

    Claimant-Appellant,

v.

INDUSTRIAL SPECIAL INDEMNITY
FUND,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

**Idaho Falls, May 2014 Term**

**2014 Opinion No. 102**

**Filed: September 24, 2014**

**Stephen W. Kenyon, Clerk**

Appeal from the Industrial Commission.

Industrial Commission order denying benefits, <u>affirmed.</u>

Robert K. Beck & Associates, PC, Idaho Falls, argued for appellant. Robert K. Beck argued.

Valdez Law Office, PLLC, Twin Falls, for respondent. Anthony M. Valdez argued.

_____

BURDICK, Chief Justice

    Kevin Hope appeals the Idaho Industrial Commission's order that the Idaho Industrial Special Indemnity Fund (ISIF) was not liable for any of Hope's benefits. The Commission found that Hope was totally and permanently disabled, but had failed to prove that his disability was a result of pre-existing back and shoulder impairments combined with his last shoulder injury. Hope argued that the Commission's decision was based on errors of law and fact. We affirm the Commission's order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Hope injured his right shoulder in 2003 while he was working for Empro Professional Services (Empro). He argued to the Industrial Commission that ISIF was liable for part of his income benefits because he was totally and permanently disabled due to pre-existing back and shoulder injuries that combined with his 2003 shoulder injury. If Hope's total and permanent disability results from the combined effects of his 2003 shoulder injury and impairments that pre-

existed that injury, then ISIF is liable for the portion of income benefits caused by the pre-existing injuries. *Tarbet v. J.R. Simplot Co.*, 151 Idaho 755, 757, 264 P.3d 394, 396 (2011).

In 2012, Hope resided in Teton, Idaho, and was 55 years old. Throughout his life, Hope worked primarily in general construction labor jobs. Hope completed a trade school carpentry program, but never got his GED. Most of Hope's work was as a carpenter framing buildings. In these jobs, Hope had to do heavy lifting, bending, and twisting, as well as carrying a tool belt that weighed about thirty pounds.

Hope tore his right shoulder's rotator cuff in 2000 while working for Pacific West Construction. That injury was diagnosed by Dr. Gary Walker, and Dr. Gregory Biddulph performed surgery in May 2000. After several follow-up visits, in November 2000 Dr. Biddulph released Hope with restrictions of no lifting more than 50 pounds, no repetitive or overhead activities, and no overhead reaching. In May 2001, Hope returned to Dr. Biddulph for bilateral shoulder pain. Dr. Biddulph found this pain was mild to palpitation and Hope still had a full range of motion and function. Dr. Biddulph recommended continued strengthening and assessed a 1% Permanent Partial Impairment (PPI) of the whole person as Hope's shoulder still had good functionality.

In 2002 and 2003, Hope worked with Blaser Construction through Empro. Hope's supervisor was Marty Blaser, who knew about his 2000 shoulder injury and that Hope needed help with heavy lifting. After starting this job, Hope returned to Dr. Biddulph reporting right shoulder pain with repetitive overhead reaching activities. Dr. Biddulph ordered an MRI arthrogram, which showed no evidence of any labral or rotator cuff tear. Dr. Biddulph recommended either a cortisone injection or physical therapy; Hope got a cortisone shot two weeks later. Hope then suffered an industrial back injury in August 2002. Dr. David Booth treated Hope for this back injury and eventually referred Hope to Dr. Walker.

Hope suffered another industrial right shoulder injury in December 2003. Dr. Biddulph again examined Hope. He determined after an MRI that Hope had torn his right shoulder's labrum and supraspinatus tendon. Dr. Biddulph performed arthroscopic surgery in February 2004. In May 2004, Dr. Biddulph released Hope to work with restrictions to not lift more than 30 pounds with no overhead, repetitive, or reaching activities. Hope has not been employed since December 22, 2003, the day he left work after his second right shoulder injury.

In March 2005, Hope requested that Dr. Robert Ward evaluate Hope's injuries. Dr. Ward used Dr. Biddulph's assessments and the *AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition*. Dr. Ward assessed Hope's current shoulder impairment at an 8% of the whole person with 3% from his pre-existing shoulder injury and 5% for his 2003 shoulder injury. Dr. Ward also gave a 12% whole person impairment for Hope's back. The Commission found Dr. Ward's assessment credible, even more so than Dr. Biddulph's assessment.

At a May 2006 deposition, Hope described his back and shoulder symptoms. He rated his injuries equally in terms of the problems they gave him. Hope attributed these symptoms to his August 2002 and December 2003 injuries. Hope stated that Marty Blaser had recently offered him his job back at Blaser Construction, but Hope declined because he thought he was not capable of those duties. The Commission consolidated Hope's August 2002 back injury claim and his December 2003 right shoulder claim. Hope settled these claims against Empro prior to his April 5, 2012 hearing in front of the Commission's Referee. After the 2012 hearing, the parties took depositions from two vocational disability consultants and filed briefs.

The Referee submitted recommended findings of fact and conclusions of law to the Commission, which the Commission adopted and approved. The Commission found that Hope proved he was totally and permanently disabled due to medical and nonmedical factors, as well as under the odd lot doctrine. The Commission found Hope proved his right shoulder medical restrictions meant he could only return to work doing sedentary and light jobs, which Hope could not get because he had no experience, had no high school diploma, and was a disabled-looking older worker.

The Commission then decided that ISIF was not liable for Hope's benefits. The Commission found that although Hope had proven he had a pre-existing impairment that was manifest and a subjective hindrance, he could not recover because he did not prove his total and permanent disablement was the combined result of pre-existing and subsequent industrial injuries. The Commission noted that no physician gave an opinion on whether Hope's 2000 shoulder injury combined with his 2003 shoulder injury to cause Hope's permanent disability. Also, the Commission found that the medical records did not give a sufficient basis to draw the conclusion that Hope's 2000 and 2003 shoulder injuries combined to cause permanent disability.

The Commission also concluded that while Hope's lower back condition contributed significantly to his overall functional deficit, the weight of evidence meant Hope would have

3

been totally and permanently disabled as a result of only his 2003 right shoulder injury. Hope filed a motion to reconsider, which the Commission denied. The Commission found the Referee discussed the combining with element and the analysis was well-supported by evidence in the record. Hope timely appealed.

## II. STANDARD OF REVIEW

On appeal, we review whether the Commission's findings of fact are supported by substantial and competent evidence. *Eckhart v. Indus. Special Indem. Fund*, 133 Idaho 260, 262, 985 P.2d 685, 687 (1999). Substantial and competent evidence is relevant evidence that a reasonable mind may accept to support a conclusion. *Morris v. Hap Taylor & Sons, Inc.*, 154 Idaho 633, 636, 301 P.3d 639, 642 (2013). Substantial and competent evidence is more than a scintilla of evidence, but less than a preponderance. *Id.* We will not disturb the Commission's conclusions on the weight and credibility of the evidence unless those conclusions are clearly erroneous. *Eckhart*, 133 Idaho at 262, 985 P.2d at 687.

However, we exercise free review over questions of law in the Commission's decisions, which includes interpreting the worker's compensation statutes. *Brown v. Home Depot*, 152 Idaho 605, 607, 272 P.3d 577, 579 (2012). We liberally construe worker's compensation statutes in the employee's favor. *Clark v. Shari's Mgmt. Corp.*, 155 Idaho 576, 579, 314 P.3d 631, 634 (2013). This Court reverses the Commission's decisions when the findings of fact do not as a matter of law support the order. I.C. § 72-732(4). The Commission must make findings sufficient for meaningful appellate review, but does not need detailed findings on every piece of evidence. *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 190, 207 P.3d 162, 166 (2009).

## III. ANALYSIS

Hope argues the Commission's findings, decision, and order grossly misapply the facts and the law. Hope contends that ISIF is liable for his worker's compensation benefits because he is totally and permanently disabled due to pre-existing right shoulder impairments that combined with his 2003 industrial right shoulder injury. The Commission decided that ISIF was not liable for Hope's benefits because Hope did not prove his total and permanent disablement was a combined result of pre-existing and subsequent industrial injuries.

### A. The Commission's denial of ISIF liability is supported by substantial and competent evidence.

ISIF compensates an injured worker's remaining income benefits if a worker suffers total and permanent disability "by reason of the combined effects of both the pre-existing impairment

4

and the subsequent injury . . . ." I.C. § 72-332. The Commission evaluates whether a worker is permanently disabled by considering the claimant's ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by non-medical factors. I.C. § 72-425. Here, vocational experts stated Hope's upper right extremity medical restrictions meant he could only return to work doing sedentary and light jobs. The Commission noted that Hope's nonmedical factors meant that Hope could not get these jobs because he had no experience, had no high school diploma, lived in a rural market, and was older and disabled-looking. Accordingly, the Commission determined that Hope was totally and permanently disabled.

After the Commission determines a worker is totally and permanently disabled, the worker must establish four elements to apportion liability to ISIF under Idaho Code section 72-332: (1) a pre-existing impairment; (2) that pre-existing impairment was manifest; (3) that pre-existing impairment was a subjective hindrance to employment; and (4) the pre-existing impairment and the subsequent injury combined to result in total and permanent disability. *Bybee v. Indus. Special Indem. Fund*, 129 Idaho 76, 80, 921 P.2d 1200, 1204 (1996). Here, the Commission found Hope's 2000 shoulder injury was a pre-existing impairment, was manifest, and was a subjective hindrance to employment. Therefore, only the fourth element is at issue.

To satisfy the fourth element of Idaho Code section 72-332, a pre-existing impairment must combine with a subsequent injury. An employee who claims ISIF liability has the initial burden to establish that the injuries combined to result in total and permanent disability. *Bybee*, 129 Idaho at 82, 921 P.2d at 1206. To show the injuries combined, "a claimant must show that but for the pre-existing impairments, he would not have been totally permanently disabled." *Eckhart*, 133 Idaho at 263, 985 P.2d at 688. This allows ISIF to assume the liability from pre-existing injuries so employers do not pay full benefits for employees that become disabled because of their pre-existing injury. *Id.* at 264, 985 P.2d at 689. This encourages employers to hire workers with disabilities. *Id*. Thus, Hope's burden was to show that he was not totally and permanently disabled from his 2003 shoulder injury alone.

Hope argues that the standard of review is whether the Commission correctly applied the facts and law when interpreting Idaho Code section 72-332. However, Hope never explains how we should interpret Idaho Code section 72-332 except noting that any interpretation should be liberal.

5

The only error in law that Hope argues is that the Commission added an evidentiary rule by requiring medical testimony that shows that a previous surgery's poor result contributed to the ultimate injury. While Hope does not state exactly where the Commission added this rule, it presumably comes from the Commission's statement about whether Hope's 2000 shoulder injury combined with his 2003 shoulder injury to cause total and permanent disability:

> Unfortunately, no physician has opined on this ultimate question, and the medical records provide insufficient basis from which to draw this conclusion. Claimant clearly had preexisting shoulder pathology. However, *it cannot be determined to a reasonable medical probability*, based upon the evidence of record, that Claimant's resultant loss of function would have differed in any way had his shoulder been completely healthy before his last industrial accident.

(emphasis added).

We have held on numerous occasions that a claimant must support his worker's compensation claim with medical testimony that has a reasonable degree of medical probability. *Sykes v. C. P. Clare & Co.*, 100 Idaho 761, 764, 605 P.2d 939, 942 (1980). The medical aspects of workmen's compensation cases mean the cases "depend upon knowledge neither expected nor possessed by lay witnesses, and the basis for any award must rest upon and be supported by medical testimony." *Id.* Claimants must prove causation with expert medical testimony, but the Commission may consider other evidence as well. *Knowlton v. Wood River Med. Ctr.*, 151 Idaho 135, 140–41, 254 P.3d 36, 41–42 (2011). Here, Hope's burden was to show that he would not have been totally and permanently disabled but for the pre-existing impairments; this is causation. Hope provided expert testimony, but only Dr. Ward gave any opinion on whether Hope's two injuries combined to result in some permanent disability. However, Dr. Ward's opinion was as to Hope's PPI in 2005, and not whether the 2000 and 2003 shoulder injury combined to leave Hope totally and permanently disabled in 2012. Therefore, Hope's experts did not give any medical opinion on whether Hope would be totally and permanently disabled without the 2000 shoulder injury. The Commission stated that "the medical records provide insufficient basis" to conclude that the 2000 shoulder injury combined with the 2003 shoulder injury. Thus, the Commission did not add an evidentiary rule to ISIF liability, but instead articulated why Hope did not meet his burden of proof.

Hope also argues that the Commission's findings are not supported by substantial and competent evidence because the existence of his pre-existing shoulder injury was an undisputed fact that should be liberally construed. Hope is correct that the 2000 shoulder injury was

6

undisputed, but simply having a pre-existing injury is not enough. Instead, we focus on "whether the evidence supports the Commission's finding that the permanent impairments caused by Claimant's last accident combined with the nonmedical factors are sufficient by themselves to render him totally and permanently disabled." *Tarbet v. J.R. Simplot Co.*, 151 Idaho 755, 759, 264 P.3d 394, 398 (2011). A pre-existing injury does not automatically combine with a subsequent injury.

Hope contends that *Quincy v. Quincy*, 136 Idaho 1, 27 P.3d 410 (2001), confirms that multiple injuries to a particular body part satisfy the combined with element. While in *Quincy* an employee's ankle injuries combined to result in total and permanent disability, the main issue was apportionment and not whether the employee's injuries combined. 136 Idaho at 6–8, 27 P.3d 415–17. Hence, *Quincy* is irrelevant to this case. Indeed, we have affirmed other Commission decisions that found an employee's pre-existing injuries did not combine with later injuries to result in total and permanent disability. *See, e.g.*, *Eckhart*, 133 Idaho at 263–64, 985 P.2d at 688–89 (substantial and competent evidence supported Commission's finding that employee was totally and permanently disabled solely as a result of a back injury and not from pre-existing arm and eye injuries).

Hope contends that he has proven that his 2000 and 2003 shoulder impairments combine because Dr. Ward assessed 3% impairment for the 2000 injury and 5% impairment for the 2003 injury, which combined to 8%. The Commission found, based on Dr. Ward's assessment, that Hope suffered a 3% PPI for his right shoulder before December 2003 that combined with 5% PPI after 2003 for a total of 8% whole person PPI. The Commission moved on to discuss whether Hope's pre-existing injuries combined with his 2003 shoulder injury to result in total and permanent disability. The Commission noted the possibility that the two shoulder injuries could combine. The Commission then found that, despite Hope's preexisting shoulder pathology, the medical records and other evidence were insufficient to carry Hope's burden of proof. This was because the Commission found the evidence did not prove that Hope's loss of shoulder function would have differed had his shoulder been completely healthy before the 2003 shoulder injury. In other words, Hope had not met his burden to prove the 2000 and 2003 shoulder injuries combined to cause total and permanent disability. The Commission must make findings sufficient for meaningful appellate review, but does not need to make detailed findings on every piece of evidence. *Stoddard*, 147 Idaho at 190, 207 P.3d at 166. The Commission found the

7

record was insufficient, which shows Dr. Ward's assessment did not give the Commission sufficient basis to determine Hope was only permanently disabled because of both shoulder injuries.

The Commission's finding is supported by substantial and competent evidence that (1) Hope provided insufficient evidence that his 2000 shoulder injury combined with his 2003 injury to cause total and permanent disability and (2) Hope's 2003 shoulder injury alone caused total and permanent disability.

In the Commission's analysis of Hope's back issues, it cited Dr. Ward's statement that

> It must be noted with this last injury and surgery Mr. Hope has significant disability. To put it bluntly his shoulder is pretty well trashed! I doubt further surgery would help and I would be very surprised if any of the orthopedic surgeons would be inclined to use surgical intervention. He will have permanent lifting, reaching pushing pulling and carrying restrictions.

Hope argues that Dr. Ward saying the shoulder was "pretty well trashed!" referred to all of Hope's shoulder problems. However, Hope's interpretation conflicts with another reasonable interpretation. The language "with this last injury and surgery Mr. Hope has significant disability" could reasonably mean that the last injury trashed Hope's shoulder all on its own. Evidence a reasonable mind might accept to support a conclusion is substantial and competent evidence to support the Commission's findings. *Morris v. Hap Taylor & Sons, Inc.*, 154 Idaho 633, 636, 301 P.3d 639, 642 (2013). Indeed, the Commission noted Dr. Ward's analysis immediately after its conclusion that "the weight of evidence favors a finding the Claimant would be totally and permanently occupationally disabled as a result of his December 2003 right shoulder injury, alone." Thus, Dr. Ward's letter supports the Commission's findings.

Other evidence in the record also supports the Commission's findings. The Commission noted that Hope's inability to engage in repetitive overhead activities or lift more than 30 pounds was related to his right shoulder impairment after his 2003 shoulder injury. The 2003 injury caused new tears to the shoulder, and Hope's lifting restriction after the 2003 surgery was 30 pounds, lower than his previous 50 pound restriction. This lower lifting limit and the fact that the 2003 tears to the superior labrum were new are evidence showing the 2000 injury was not a cause of total and permanent disability. The burden is on the party claiming ISIF liability "to establish that the pre-existing impairment and the subsequent injuries in some way combined to result in total permanent disability." *Bybee*, 129 Idaho at 82, 921 P.2d at 1206. These facts

8

support the conclusion that Hope did not meet this burden. Thus, substantial and competent evidence supports the Commission's findings.

Hope does not provide any argument on appeal about how his pre-existing back injury combined with his 2003 shoulder injury. We do not consider issues on appeal that are not supported by law, authority, or argument. *Woods v. Sanders*, 150 Idaho 53, 60, 244 P.3d 197, 204 (2010). Thus, we do not consider the portion of the Commission's decision that found Hope's back injury did not combine with his 2003 shoulder injury to cause total and permanent disability. Because substantial and competent evidence supports the Commission's finding that the 2003 shoulder injury alone resulted in total and permanent disability, we affirm the Commission's order.

## B. The Commission's denial of Hope's motion for reconsideration was within its discretion.

Hope also appeals the Commission's denial of his Motion for Reconsideration, contending that the Commission failed to review the Referee's finding. The Commission stated that Hope did not establish the "combined with" element because he did not prove his last injury combined with a pre-existing injury. The Commission noted that the Referee discussed the combining with element and the analysis was well-supported by the record. This Court reviews the Industrial Commission's decision to deny a motion for reconsideration using an abuse of discretion standard. *See Kirk v. Karcher Estates, Inc.*, 135 Idaho 230, 233, 16 P.3d 906, 909 (2000). The Commission reviewed the Referee's finding twice: (1) when it adopted the initial order denying ISIF liability and (2) on reconsideration. Each time the Commission provided its reasoning. We therefore affirm the Commission's denial of Hope's motion for reconsideration.

## C. Neither party is awarded attorney fees.

Hope contends that his attorney fees should be reimbursed on appeal because ISIF is well aware of the gross mistakes in the Commission's order and thus should not have opposed this appeal. ISIF did not request attorney fees. Hope does not prevail in this appeal. Thus, we do not award him attorney fees.

### IV. CONCLUSION

We affirm the Industrial Commission's order. No attorney fees on appeal. Costs to ISIF.

Justices EISMANN and HORTON, **CONCUR.**

J. JONES, Justice, dissenting.

I am unable to join in the Court's opinion for several reasons. First and foremost, the Commission appears to be flying by the seat of its pants in ISIF cases. In this case, the Commission concludes that Hope's "medical records provide insufficient basis from which to draw [the] conclusion" that his 2000 impairment combined with his 2003 injury "such as to trigger ISIF liability." The Commission implies that a physician must directly opine on this ultimate question. However, in *Corgatelli v. Steel West*, *Inc.*, 2014 WL 4198197 (Idaho Aug. 25, 2014), just released by the Court, we disapproved of the Commission's determination of ISIF liability based solely upon its own examination of medical records without supporting medical opinion. *Id.* at *11. In neither case did the Commission utilize the "but for" test that has been approved and applied by this Court in numerous cases.[1] *See Garcia v. J.R. Simplot Co.*, 115 Idaho 966, 970, 772 P.2d 173, 177 (1989) ("We acknowledge that the 'but for' standard is the appropriate test to determine whether the total permanent disability is the result of the combined effects of the pre-existing condition and the work-related injury.") We vacated the Commission's decision in *Corgatelli* for its failure to apply the "but for" test. I would do likewise in this case.

Further, the Commission misconstrued the opinion of Dr. Ward, Hope's medical expert. Dr. Ward did not testify before the Commission but stated his opinion in a letter introduced into the record. Hope, however, did testify before a Commission referee, stating that the 2000 injury to his right shoulder cut his ability to do his job by half, while the 2003 injury made it impossible to lift anymore. This testimony was completely ignored by the Commission even though the Commission found Hope to be a credible witness and that "[h]is descriptions of his physical symptoms and capabilities were also persuasive."

In its *Corgatelli* decision (*Corgatelli v. Steel West, Inc.* IC 2005-501771 (Idaho Ind. Com. July 26, 2012)), the Commission determined that ISIF was liable for a portion of a claimant's total disability despite the absence of any medical opinion indicating that the claimant's 1994 impairment combined with a 2005 injury. The claimant, Corgatelli, had been assigned a 5% whole person impairment rating in October of 1995 for the 1994 injury, resolving the claim in a lump sum settlement agreement. In August of 2010, Corgatelli was assigned a 15% whole person permanent impairment rating for the 2005 injury. There was no medical testimony that the total

---

[1] In its decision in this case, the Commission did cite *Garcia* and another "but for" case (*Bybee v. State, Indus. Special Indem. Fund*, 129 Idaho 76, 921 P.2d 1200 (1996)), but it did not mention or apply the "but for" test.

disability award was a result of the combination of the two impairment ratings. Indeed, the Commission made its determination based upon its own review of medical records.

The medical testimony in *Corgatelli* seemed to indicate that the claimant's impairment and disability was entirely related to his second accident. According to the Commission findings:

> We recognize that Dr. Simon has stated that the limitations/restrictions defined in the [functional capacity evaluation] are related to the January 3, 2005 accident. At first blush, this appears to support a conclusion that it is the 2005 accident, standing alone, and without contribution from the preexisting impairment, that renders Claimant totally and permanently disabled. If true, then there can be no "combining with" and the claim against the ISIF would fail on this element of the prima facie case. However, Dr. Simon was not examined about this statement at the time of his deposition, and it is not entirely clear that his intentions in making this statement are as described by the ISIF.

Dr. Simon was completely aware of the 1994 injury and erroneously thought that Corgatelli had received a 12% PPI rating for it, but appeared to assign all of Corgatelli's impairment to the 2005 injury and made absolutely no comment regarding a combination of the two injuries.

Dr. Simon, according to the Commission, "rated Claimant's permanent impairment due to his back condition attributable to his industrial injury at 15% of the whole person." It continued: "Dr. Simon did not express an opinion on the question of whether Claimant's impairment should be apportioned between the effects of the 2005 accident and Claimant's preexisting condition." Nevertheless the Commission concluded, after looking at the claimant's medical records, that "[b]ecause Claimant's surgery was necessitated by both the subject accident and Claimant's preexisting condition, and because Claimant had a poor surgical outcome, such that he is currently totally and permanently disabled, it is clear that the combining with element of the prima facie case has been met." Thus, contrary to the Commission's apparent holding in the present case, medical testimony was not necessary in *Corgatelli* to establish the "combines with" element.

This certainly has the appearance of arbitrary action on the part of the Commission. It is not clear what caused the Commission to determine ISIF liability based on its perusal of medical records in *Corgatelli*, while declining to do so in this case. Indeed, this is a stronger case because there is expert medical testimony on the "combined with" issue. The Commission just misread it.

In his letter, Dr. Ward opined in pertinent part:

> I have examined Mr. Hope and reviewed his medical records with the intent of rendering a permanent impairment based on the AMA Guides to the Evaluation of Permanent Impairment 5th edition.

11

> As you are aware Mr. Hope had a prior injury and prior surgery on his shoulder, so <u>there is some pre-existing impairment that must be addressed</u> in regard to the shoulder.
>
> His current shoulder impairment is 8% whole person with 3% Whole person pre-existing, for a total of 5% whole person for the current injury. . . .
>
> It must be noted with this last injury and surgery, Mr. Hope has significant disability. To put it bluntly his shoulder is pretty well trashed!

(emphasis added). The Commission construed this to mean that Hope "would be totally and permanently occupationally disabled as a result of his December 2003 right shoulder injury, alone."[2]

The Commission's interpretation of Dr. Ward's opinion is rather strained. Dr. Ward did not testify so there is no need to give deference to the Commission's incorrect reading of his letter. He states that the "pre-existing impairment . . . must be addressed in regard to the shoulder." He documents the 3% whole person pre-existing impairment. There would be no point in saying the pre-existing impairment <u>must</u> be addressed if it played no role in trashing his shoulder.

While Dr. Ward did not use the magic words "combined with" when stating his opinion as to Hope's right shoulder impairment, it is clear that was the gist of what he was saying. According to Dr. Ward, Hope's "current shoulder impairment is 8% whole person with 3% Whole person pre-existing, for a total of 5% whole person for the current injury." That is, he calculated Hope's impairment following the 2003 injury at 8%, determined that 3% of that was a result of the 2000 injury, calculating an impairment of 5% for the 2003 injury. Looking at it another way, the 3% impairment, plus the 5% impairment, equaled the 8% impairment or, as my grade school math teacher would have put it, 3 combined with 5 equals 8. Dr. Ward continued: "It must be noted with this last injury and surgery Mr. Hope has significant disability. To put it bluntly, his shoulder is pretty well trashed!" It is rather clear Dr. Ward meant that the 3% existing impairment from 2000 combined with 5% from 2003 equaled a trashed shoulder. Contrary to Dr. Simon in the *Corgatelli* case, Dr. Ward did apportion Hope's impairment between the two injuries.

---

[2] Had this been the purport of Dr. Ward's letter, he could simply have stated that the 2003 injury trashed Hope's right shoulder. There would have been no need to pointedly mention the preexisting impairment or to apportion impairment between the two injuries. The Commission appears to be putting words into Dr. Ward's mouth that he did not utter in his letter. On the other hand, in *Corgatelli*, where it appeared that Dr. Simon did assign all of the claimant's impairment to the last injury, the Commission supplied wording to the contrary in order to establish ISIF liability. In neither case should the Commission have supplied any extraneous wording to the doctor's opinion.

This reading of Dr. Ward's letter is consistent with Hope's own testimony, which the Commission completely ignored. Although in *Corgatelli* it searched the record for evidence to support its finding of ISIF liability, it did not consider pertinent testimony submitted here by Hope. Certainly, a credible worker's compensation claimant's testimony should be considered in determining whether a preexisting impairment combines with a new injury to result in ISIF liability. In *Garcia*, the Court noted that "medical and lay testimony" supported a finding that a claimant "had pre-existing permanent physical impairments." 115 Idaho at 968−69, 772 P.2d 175−76. Indeed, a claimant's testimony can play a critical part in the determination of a worker's compensation claim. *See Stevens-McAtee v. Potlatch Corp.*, 145 Idaho 325, 331−32, 179 P.3d 288, 294−5 (2008). There is no reason why a credible claimant's testimony should not play an important part in a case involving potential ISIF liability. After all, the claimant is the person best positioned to testify as to how he or she has been affected by each of multiple injuries.

Hope testified that he had suffered substantial impairment of his right shoulder as a result of his 2000 injury and that with the additional 2005 injury he could no longer perform his job.[3] During the April 5, 2012 hearing, Hope testified as follows regarding the status of his shoulder prior to the 2003 injury:

> Oh, yeah. I had shoulder pain, and I didn't have the strength that I did before. . . .
> It's, it's gradually deteriorated through time. I wasn't back the hundred percent
> when they wanted me to go back to work in the first place from my first surgery.

He testified that he could not carry rebar on his right shoulder after the 2000 injury. He testified he could use a nail gun with that shoulder prior to the 2003 injury but not afterwards. He stated that after the 2003 injury "it just got to where I could not even lift my arm up. And I told Marty, 'I'm done.'" In a deposition taken May 11, 2006, he testified that after the 2000 injury he "[c]ouldn't lift near the weight that I could before. I didn't have my strength." When asked what his limitation was, he replied "I'd be—I'd feel safe in saying half. I was cut in half, good half, of my ability to do my job. He testified that after the 2003 injury:

> I couldn't lift no more. And I told him, I says, "I'm done, Marty." I says, "My
> shoulder won't even lift anymore." I says, "I've got to go back to the doctor."
> And that was my last day.

Although Hope did not use the words "combined with," the import of his testimony is clear. He suffered substantial limitations on his ability to use his right shoulder in performing his work as a

---

[3] Indeed, the Commission specifically found that "Claimant has proven his right shoulder constituted a substantial hindrance [to employment] prior to his December 2003 industrial injury."

result of the 2000 injury and the additional injury in December of 2003 added to those limitations to the extent of making it impossible to continue doing his job.

It is odd that the Commission did not take this testimony into account because it was not contradicted in any way and the Commission specifically found Hope's "descriptions of his physical symptoms and capabilities . . . persuasive." We have oft held that a Commission referee "must accept as true the positive, uncontradicted testimony of a credible witness. . . ." *Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 758, 302 P.3d 718, 726 (2013).

As we have done with *Corgatelli*, I would reverse the decision of the Commission for failure to apply the "but for" test, for misunderstanding the import of Dr. Ward's opinion letter and for ignoring pertinent, credible testimony presented by Hope.

Justice W. JONES CONCURS.