## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 39747

BENJAMIN MORRIS,                                      )
                                                     )
    Claimant-Appellant,                          )      Coeur d'Alene, April 2013 Term
                                                     )
v.                                                   )      2013 Opinion No. 63
                                                     )
HAP TAYLOR & SONS, INC., Employer,                   )      Filed: May 23, 2013
and LIBERTY INSURANCE                                )
CORPORATION, Surety,                                 )      Stephen W. Kenyon, Clerk
                                                     )
    Defendants-Respondents.                      )
_____            )

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Starr Kelso Law Office, Chtd., Coeur d'Alene, for appellant. Starr Kelso argued.

Law Offices of Harmon & Day, Boise, for respondents. Kent W. Day argued.
_____

J. JONES, Justice.

Benjamin Morris, a workers' compensation claimant, appeals an order of the Idaho Industrial Commission denying his motion to set aside a lump sum settlement agreement he made with his employer's surety, Liberty Northwest Insurance. Morris initiated his workers' compensation action after he suffered injuries while working construction for his employer, Hap Taylor & Sons, Inc. We affirm the Industrial Commission's order.

### I.
### FACTUAL AND PROCEDURAL HISTORY

Morris sustained a serious head injury on October 18, 2006, when a twenty-five pound rock thrown by a piece of heavy machinery struck him in the head. Morris filed a workers' compensation complaint on November 19, 2007, seeking medical and disability benefits. At that time he was represented by attorney James Hannon. Several months later, Hannon withdrew and attorney Michael Walker substituted as his counsel in the proceeding.

1

Morris filed a request for calendaring on May 15, 2009, seeking a hearing before the Commission to address his benefits claim. The request stated that settlement negotiations were "being undertaken but have not been successful to date." On June 1, 2009, the Commission granted Morris' request, and set a hearing for January 5, 2010. However, prior to the hearing, the parties settled and the Commission vacated the hearing.

Morris initiated settlement discussions in a fax to Liberty on December 17, 2009, indicating he was willing to "settle the indemnity side of this case for $68,000 in new money." The following day, Liberty responded with a counter-offer—a single lump sum payment of $54,381, which Morris accepted "with the clear understanding this is a partial settlement and does not resolve the medical side." On January 4, 2010, the parties executed a Stipulation and Agreement of Partial Lump Sum Discharge (LSSA) and submitted it to the Commission for approval. Finding that the LSSA was in the best interests of the parties, the Commission approved it by an order dated January 19, 2010.

Approximately eighteen months later, on July 8, 2011, a Notice of Appearance was filed with the Commission whereby Morris substituted Walker with his present counsel, attorney Starr Kelso.[1] On the same day, Morris filed a motion to review the LSSA, accompanied by an affidavit signed by Kelso. Kelso's affidavit expressed concern that Morris may not be "competent to testify" due to his injury—however, no credible evidence of incompetence was ever offered.[2] Kelso went on to recount the substance of conversations Morris claimed to have had with Walker. Kelso affied that Morris recalled Walker advising him "that he wouldn't get any more money from [Liberty] than the amount of the settlement offer" and that there was a good chance Morris would end up owing a lot of money to expert witnesses if they proceeded to hearing. Kelso conceded in a subsequently filed second affidavit that, "I do not, and never have, professed to state that any or all of the statements of Benjamin Morris to me as set forth in my [first] affidavit are completely true."

On July 22, 2011, Respondents filed an objection to Morris' motion to review. Ultimately,

---

[1] According to affidavit testimony submitted by Walker, he received a Notice of Appearance from Kelso on July 11, 2011. Prior to receiving the notice, Walker believed that he still represented Morris and was unaware that Kelso was communicating with Morris.

[2] In its final order, the Commission stated, "Mr. Kelso is concerned that Claimant may not be competent to sign an affidavit, yet there has been no professional pronouncement of Claimant's alleged incapacity." In his briefing on appeal, Morris' attorney asserts that Morris may have been rendered incompetent by virtue of his injuries, but has submitted no sworn professional testimony to indicate that Morris was incompetent at the time he signed the LSSA. The attorney points out that Morris was approved for social security disability payments arising from the injuries, no evidence from that proceeding has been presented here. There is no indication that a guardian has been appointed to represent Morris' interests. Thus, we do not consider the matter of Morris' competence.

the Commission denied Morris' motion to review the LSSA. Following the Commission's refusal to review the LSSA, Morris filed a Motion to Set Aside Lump Sum Settlement Agreement, seeking to void the LSSA on grounds of illegality and constructive fraud. With regard to the first ground, Morris contended the LSSA was invalid for failing to include his current medical and employment status, as required by a Commission rule. With regard to the second ground, Morris contended that Walker had induced him to sign the agreement based on fraudulent representations. Morris requested that the Commission grant a hearing on his motion.

While Morris' motion to set aside the LSSA was pending, Morris also moved the Commission to provide him with all of the documents that it considered when approving the LSSA. The Commission granted the motion and provided Morris with his entire "benefits file."

The Commission issued an order denying Morris' motion to set the LSSA aside on February 7, 2012. The order found that: (1) the LSSA was not critically flawed because the Commission was adequately informed of Morris' current medical and employment status prior to its approval; (2) Morris had not shown the type of fraud that would allow setting aside the LSSA; and (3) there was no need for a hearing. Morris filed a timely appeal to this Court.

## II.
## ISSUES ON REVIEW

I.  Was the LSSA void for its failure to set out Morris' current medical and employment status?
II.  Did the Commission err in failing to grant a hearing on Morris' fraud claim?
III.  Is Morris entitled to attorney fees on appeal under I.C. § 72-804?

## III.
## DISCUSSION

### A.  Standard of Review.

When reviewing a decision of the Industrial Commission, this Court exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion. It is more than a scintilla of proof, but less than a preponderance. All facts and inferences will be viewed in the light most favorable to the party who prevailed before the Industrial Commission.

*Fowble v. Snoline Exp., Inc.*, 146 Idaho 70, 74, 190 P.3d 889, 893 (2008) (citations omitted). "The interpretation of a statute is a question of law over which this Court exercises free review." *Williams v. Blue Cross of Idaho*, 151 Idaho 515, 521, 260 P.3d 1186, 1192 (2011).

**B. The LSSA is not illegal or void for failure to set out Morris' current medical and employment status.**

Morris urged the Commission to set the LSSA aside, claiming it to be void because the text of the agreement did not set out his current medical and employment status, as required by Rule 18(C)(1)(c) of the Commission's Judicial Rules of Practice and Procedure (J.R.P.). The Commission denied Morris' motion, stating:

> [Morris] first avers that the January 19, 2010 [LSSA] is void because there is no language setting forth [Morris'] current medical status and employment status as required by [J.R.P. 18(C)(1)(c)]. As stated in Rule 18, the purpose of the requirements are to ensure the Commission has information on which a determination can be made. While the text of the LSSA may not have set forth in detail [Morris'] medical status and employment status, the Commission was apprised of these facts with the supplemental information supplied by the parties through their respective attorneys.

On appeal, Morris raises the same argument, contending that the Commission erred in approving the LSSA because it did not comply with the requirements of J.R.P. 18(C)(1)(c). That provision says:

> To ensure the Commission has information on which a determination can be made, the Commission requires the parties to submit the following information and serve a copy on each of the parties:
>
> 1. Text of the terms of settlement, which shall include:
>
>     c. Claimant's current medical and employment status.

Morris cites to I.C. § 72-508, which states: "Rules and regulations as promulgated and adopted, if not inconsistent with law, shall be binding in the administration of [the workers' compensation] law." Morris argues that the Commission is bound to strictly adhere to J.R.P. 18(C)(1)(c), and that its failure to do so was an act outside of the Commission's statutory power. Further, Morris contends that the LSSA is an illegal contract, subject to being voided by this Court, citing *Wernecke v. St. Maries School Dist.*, 147 Idaho 277, 207 P.3d 1008 (2009) and *Trees v. Kersey*, 138 Idaho 3, 56 P.3d 765 (2002).

Respondents counter that the Commission's approval was proper because, although the text of the LSSA did not include Morris' current medical and employment status, the Commission considered Morris' medical and employment status prior to approval. Respondents also argue that "[t]raditionally, this Court has not required the Industrial Commission to adhere to strict rules of procedure and evidence in its hearings," and that failing to strictly adhere to the text of J.R.P.

18(C)(1)(c) does not establish that the Commission acted in excess of its power.

The Commission issued its order approving the LSSA on January 19, 2010. The order recited "the above-entitled proceedings are DISMISSED WITH PREJUDICE as to permanent indemnity benefits and WITHOUT PREJUDICE as to medical benefits and time loss benefits relating to any future medical that is causally related to the October 18, 2006 injury." With regard to indemnity benefits, this constituted a final order of the Commission. The Commission's decision to approve a lump sum agreement is a final "decision" of the Commission. *Davidson v. H.H. Keim Co., Ltd.*, 110 Idaho 758, 760, 718 P.2d 1196, 1198 (1986). Thus, the order was appealable pursuant to Idaho Appellate Rule 11(d). No appeal was timely filed from the order.

Since there was no appeal of the order, Morris is clearly faced with an uphill task in seeking to void the LSSA to obtain additional indemnity benefits. According to I.C. § 72-718: "A decision of the commission, in the absence of fraud, shall be final and conclusive as to all matters adjudicated by the commission." This Court has set aside a lump sum agreement on grounds of illegality but in that case the agreement was violative of the provisions of a workers' compensation statute. *See Wernecke*, 147 Idaho at 286, 207 P.3d at 1017 (the Commission "erred by approving an agreement" that purported to waive an employee's right to compensation for future injuries because the Commission failed to make findings required by I.C. § 72-332). However, Morris does not contend that the LSSA violates the provisions of any statute and has not shown that it is afflicted by any other illegality. At most, the agreement fails to contain one item in a list of requirements in a procedural rule adopted by the Commission. Morris cites no authority for the proposition that a lump sum settlement agreement can be voided for illegality where the claimed defect is a failure by the Commission to observe a requirement of one of its rules of procedure.

It must be kept in mind that procedure before the Commission is less formal than in court proceedings. I.C. § 72-708 provides: "Process and procedure under [the workers' compensation] law shall be as summary and simple as reasonably may be and as far as possible in accordance with the rules of equity." With regard to the Commission's procedure, this Court has said:

> Since the inception of Idaho's Workers' Compensation Act, Industrial Commission proceedings have been informal and designed for simplicity; the primary purpose of these proceedings being the attainment of justice in each individual case . . . . Consistent with these policies, the Commission has historically been imbued with certain powers that specifically enable it to simplify proceedings and enhance the likelihood of equitable and just results.

*Hagler v. Micron Tech., Inc.*, 118 Idaho 596, 599, 798 P.2d 55, 58 (1990) (citations omitted). We are presented with no grounds sufficient to declare the LSSA illegal or void for omitting one item of information required under a procedural rule.[3]

### C. The Commission did not err in denying Morris' request for a hearing on his fraud claim.

Morris contends that the Commission erred in denying his request for a hearing. The thrust of his argument is that Walker induced him to sign the LSSA by making fraudulent representations. Morris asserts that where a lump sum settlement agreement is procured through fraud, the Commission's decision approving it is not final under I.C. § 72-718 and may be set aside.

The Commission declined to grant a hearing on the ground that Morris had failed to present an adequate showing of the type of fraud that would affect the finality of its order approving the LSSA. The Commission's order articulated three reasons why Morris' evidence of fraud was inadequate. First, the fraudulent statements attributed to Walker were all related second hand by Kelso and he could not certify that they were true or accurate. Second, the Commission found that, even if the statements Kelso claimed Walker to have made were accurate, they were not fraudulent because "the advice given by prior counsel are statements of

---

[3] Although it does not provide grounds for invalidating the LSSA, it goes without saying that the Commission should have required the parties to include Morris' current medical and employment status in the LSSA. The rule reads that the "Commission requires the parties to submit" the information. The Commission has the responsibility of observing the requirements of its procedural rules, as well as ensuring that the parties comply with such rules. However, the plain language of J.R.P. 18 makes it clear that the purpose of including a claimant's "current medical and employment status" is simply to ensure that the Commission has information on which a determination can be made. The Commission's order stated:

> While the text of the LSSA may not have set forth in detail Claimant's medical status and employment status, the Commission was apprised of these facts with the supplemental information supplied by the parties through their respective attorneys. The parties submitted medical reports, rehabilitation reports, impairment ratings, and neurological reports. The Commission was well aware that Claimant suffered a head injury, that Claimant suffered impairment, and that Claimant suffered permanent disability.

The record contains over 100 pages of medical reports from various doctors and clinicians offering opinions about the severity of Morris' injuries, his resulting disability, and his employability. Based on all of this information, the Commission concluded that the LSSA was in Morris' best interests. As a result, the inclusion of Morris' medical and employment status in the text of the LSSA was not a serious omission because Morris' benefits file, reviewed by the Commission, contained the requisite information.

At no point in Morris' argument on appeal has he argued that the benefits file reviewed by the Commission was incorrect. Rather, Morris complains that a report from one of his physicians, Dr. Stanek, which contained more current medical information, was not reviewed by the Commission. However, that report was made on January 18, one day prior to the Commission's approval of the LSSA, and there is no indication in the record that Morris' attorney notified the Commission of the report or provided a copy of the same to the Commission before it approved the LSSA.

opinion which are based on a wide spectrum of evidence and prior counsel's professional experience." Third, the Commission stated that an order approving a lump sum settlement agreement, like any other of its final decisions, can only be set aside upon a showing that the "employer's surety" committed fraud in procuring the agreement, citing *Harmon v. Lute's Const. Co., Inc.*, 112 Idaho 291, 293−94, 732 P.2d 260, 262−63 (1986). Since the fraud was allegedly committed by Morris' attorney, rather than by the employer's surety, the type of fraud required under I.C. § 72-718 had not been shown. Based on its conclusion that the requisite fraud had not been shown, the Commission found no need to hold a hearing on the matter.

On appeal, Morris argues that the text of I.C. § 72-718 does not support the Commission's conclusion that only fraud on the part of the employer's surety will suffice to set aside a claimant's award. Morris contends that it does not matter who committed the fraud. Respondents, on the other hand, agree with the Commission—that in order to set aside a Commission decision on grounds of fraud, the fraud must have been perpetrated by the employer's surety.

The Commission accurately recited the *Harmon* Court's statement that, "[t]he only grounds sufficient to permit the commission to set aside claimant's award would be allegations and proof of fraud on the part of employer's surety in procuring the agreement." 112 Idaho at 293, 732 P.2d at 262. Although the statement was correct in the context of that case, where the claimant was alleging fraud against the surety, the statement should not be read as limiting the Commission's ability to set aside a lump sum settlement agreement only for fraud committed by a surety. For purposes of this case, the Commission should have cited *Harmon* for the more generally applicable statement that "once a lump sum compensation agreement is approved by the commission, that agreement becomes an award and is final and may not be reopened or set aside absent allegations and proof of fraud." *Id.* at 293, 732 P.2d at 262.

It is highly unlikely the Commission meant that an award fraudulently obtained by a workers' compensation claimant is final and immune from attack. If any "party" to a workers' compensation proceeding procures a decision through fraud, either personally or with the assistance of its attorney, its finality can be challenged by another party under I.C. § 72-718. That provision speaks of "the absence of fraud," and does not limit fraud to that introduced by the claimant, the surety, or the employer. It would be a strange result if a decision could only be challenged for fraud committed by the surety and not by the claimant or employer. However, that

7

does not mean that fraud committed by an attorney for a party against his client would affect the finality of a Commission decision. A distinction must be made between fraud committed by an attorney on behalf of his client in obtaining a decision and fraud committed by an attorney against his client. In the former instance, the attorney is acting on behalf of a party to the proceeding. In the latter instance, the attorney is acting in his or her own interest. The Industrial Commission is not charged with entertaining and deciding peripheral disputes between a party and its counsel.

In this case, Walker was purportedly acting on behalf of his client, Morris, in obtaining the Commission's approval of the LSSA. If Walker gave bad advice to his client or fraudulently induced his signature on the LSSA, that is a matter for determination in separate proceedings, such as an action for legal malpractice. With regard to claims that professional negligence or unskillfulness provide grounds for setting aside a judgment, we have often stated:

> It is a well-settled rule in Idaho that the negligence, mistakes, or unskillfulness of counsel do not provide a basis for setting aside a civil judgment. Since civil litigants voluntarily choose their attorneys, the fault in ineffective representation cases is attributed to the party himself. Under this rule, litigants in such cases will not be able to avoid the consequences of their attorneys' mistakes.

*Danti v. Danti*, 146 Idaho 929, 941−42, 204 P.3d 1140, 1152−53 (2009) (citations and quotations omitted). Although this Court has not had occasion to apply this rule where a client alleges fraud by his or her attorney, we note the Georgia Supreme Court has had occasion to do so:

> Assuming that the evidence in the present case demands a finding that the movant was imposed on, it affirmatively appears that this consisted of conduct and misrepresentations of her own counsel, and not counsel for the respondent. Fraud, such as would authorize the setting aside of the verdict at the instance of the movant, is fraud of respondent or his counsel. She is not at liberty to avail herself of the misconduct of her own counsel, for the purpose of annulling the verdict obtained by respondent.

*Ketchem v. Ketchem*, 11 S.E.2d 788, 790 (Ga. 1940).

We take this opportunity to expand our existing rule to cover alleged fraud on the part of the attorney. The courts provide an adequate remedy for a client to seek redress, either for mere negligence or for intentional misconduct. The Commission is not suited to resolving this type of

claim. Therefore, the Commission correctly determined that the type of fraud alleged here did not affect the finality of its order approving the LSSA.[4]

We now turn to the question of whether the Commission erred by declining to grant Morris a hearing. It should first be observed that J.R.P. 18(D) does not require a hearing on a proposed lump sum settlement agreement in the first instance. The rule provides:

> The submission of a proposed lump sum settlement or agreement shall not be considered a motion. If the Commission declines to approve a proposed lump sum settlement agreement, the Commission may request additional relevant information, or on its own motion or on the motion of the party to the agreement scheduled a hearing limited to the issue of whether the lump sum settlement and discharge of one or more defendants is in the best interests of all parties. There is no appeal from the Commission's decision.

J.R.P. 18(D). While the latter sentence cannot restrict this Court's jurisdiction, the rule clearly does not grant a hearing, as a matter of right, when a proposed lump sum settlement agreement is initially submitted to the Commission for approval. And, even where a party makes a timely request for a new hearing or for reconsideration, the decision is at the Commission's discretion. *See Hopkins v. Pneumotech, Inc.*, 152 Idaho 611, 614, 272 P.3d 1242, 1245 (2012); *Curtis v. M.H. King Co.*, 142 Idaho 383, 388, 128 P.3d 920, 925 (2005). Where Morris has not alleged the type of fraud that would affect the finality of the Commission's decision, the Commission clearly acted within its discretion in denying a hearing.

### D. Morris is not entitled to attorney fees under I.C. § 72-804.

On appeal, Morris argues that he is entitled to an award of attorney fees under I.C. § 72-804 because Liberty made misrepresentations to the Commission that ultimately led to this appeal. Respondents argue that attorney fees under I.C. § 72-804 are not warranted in this case because they had reasonable grounds for asking this Court to affirm the Commission's decision.

"Attorney fees are not granted to a claimant as a matter of right under worker's compensation law, but may only be affirmatively awarded under the circumstances set forth in

---

[4] The record does disclose some issues of concern. In addition to the unverified claims made by Kelso that Morris was pressured into settling against his best interests, there does appear to be some disregard of those interests. In a memorandum seeking attorney fees, dated December 28, 2009, Walker stated that Morris "has been released to return to work without significant physical work restrictions," despite a December 15, 2009, report from Morris' vocational rehabilitation consultant recommending that Morris "be involved in a sheltered employment placement with a job coach assigned; along with a work hardening program in order for this case to resolve successfully." Further, one of Walker's physicians, Dr. Stanek, issued a report on January 18, 2010, recommending that Morris be referred to a pain clinic "for comprehensive program to facilitate return to work." There is no indication in the record that Walker made Dr. Stanek's report available to the Commission before it approved the LSSA (which occurred the next day), or that he sought to revisit the settlement terms.

I.C. § 72-804." *Stevens-McAtee v. Potlatch Corp.*, 145 Idaho 325, 336, 179 P.3d 288, 299 (2008). Idaho Code § 72-804 provides:

> If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground … the employer shall pay reasonable attorney fees in addition to the compensation provided by this law.

This Court has repeatedly held that I.C. § 72-804 allows for an award of attorney fees on appeal where the employer or its surety unreasonably brought or contested a claim. *Nelson v. City of Bonners Ferry*, 149 Idaho 29, 35, 232 P.3d 807, 813 (2010); *Anderson v. Harper's Inc.*, 143 Idaho 193, 199, 141 P.3d 1062, 1068 (2006).

In this case, Respondents are the prevailing party on appeal and have not unreasonably defended the case. Thus, Morris is not entitled to fees under I.C. § 72-804.

## IV.
## CONCLUSION

The Commission's decision to deny Morris' motion to set the LSSA aside is affirmed. Morris is not entitled to attorney fees on appeal. Costs to Respondents.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.