# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43058-2015

| | | |
|---|---|---|
| AMANDA WILSON, | ) | |
| | ) | Boise, February 2016 Term |
| Claimant-Appellant, | ) | |
| | ) | 2016 Opinion No. 30 |
| v. | ) | |
| | ) | Filed: March 23, 2016 |
| CONAGRA FOODS LAMB WESTON, | ) | |
| Employer, and OLD REPUBLIC | ) | Stephen W. Kenyon, Clerk |
| INSURANCE CO., Surety, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is affirmed.

Justin Aylsworth, Goicoechea Law Offices, Chtd., Boise, argued for appellant.

W. Scott Wigle, Bowen & Bailey, Boise, argued for respondents.

_____

EISMANN, Justice.

This is an appeal from the order of the Industrial Commission holding that Claimant failed to prove that she suffered an industrial accident that caused an injury in September/October 2010 or March/April 2011. We affirm the order of the Commission.

## I.
## Factual Background.

On May 31, 2011, Amanda Wilson ("Claimant") filed a complaint under the Worker's Compensation Act to obtain benefits for a back injury that she alleged was caused or aggravated on March 16, 2011. The matter was heard on February 22, 2013, before a referee, who submitted proposed findings of fact, conclusions of law, and recommended order. The Industrial Commission declined to adopt the referee's recommendation and issued its own findings of fact, conclusions of law, and order. It found that Claimant had failed to prove that she suffered an

injury caused by an accident arising out of and in the course of her employment with Conagra Foods Lamb Weston ("Employer").

On February 15, 2008, Claimant had visited an emergency room in a hospital in Gilbert, Arizona, complaining that for one year she had back pain and right leg radiculopathy with a recent flare-up. She rated her pain as ten out of ten and stated that she was not doing anything out of the ordinary when the pain began. An MRI two weeks later showed a herniated disc at L4-5 and some disc degeneration at L5-S1. She received pain treatments from March to May of that year.

On October 4, 2010, Claimant sought additional treatment for her low-back pain and right-leg sciatica at a health clinic in Twin Falls. She stated that she had sustained a herniated disc in her back about three years ago and had reinjured her back nine days earlier shoveling potatoes. The physician who saw her diagnosed right lower-extremity sciatica and referred her to an orthopedic spine surgeon. She did not follow up with the surgeon until April 11, 2011.

On February 7, 2011, Claimant began working for Employer in Twin Falls. She had previously worked at Employer's premises as an employee of an agency that provided temporary employees. Her work consisted of performing general manual labor, including shoveling potatoes.

On April 5, 2011, Claimant visited a nurse practitioner because of back pain. Claimant described bilateral sciatic pain radiating to her heel that had begun six months earlier. She said it had improved after treatment until one or two days ago when she had been shoveling potatoes.

On April 6, 2011, Claimant sought medical care at a hospital emergency room in Twin Falls. She complained of increasing low-back pain over the prior three weeks, which initially started while shoveling potatoes while working for Employer. She stated that she felt a twinge at first, but the pain progressively increased. She also said that she initially felt a tingling down her left leg, and at the time of her visit her left leg was numb from her calf on down. She finished her eight-hour shift on April 5, 2011, which was the last day of shoveling potatoes. The next day, after she worked her eight-hour shift on another task, she went to the emergency room.

On April 8, 2011, Employer learned from the hospital and physician of Claimant's trip to the emergency room regarding a work injury. Employer's employee handbook included a list of safety rules, one of which was, "Immediately report each on-the-job accident or injury (regardless of how minor it may be at the time) to a supervisor or manager, and to the Plant

2

Nurse." Employer immediately suspended Claimant pending further investigation of whether she had violated this policy. Employer contacted the emergency-room physician, and he was adamant that Claimant had reported to him that she was injured at work and that his notes so reflected.

On April 13, 2011, Claimant visited another physician because of low-back pain and numbness in her legs. She reported that she has had chronic back issues for the past four years and went to the emergency room on April 6, 2011. Her fiancé told the emergency-room physician that her pain was related to shoveling at work, but the pain was not work related. She said it was something with which she had dealt for the past several years, that there was a recent flare-up, and that she had no recent injuries. She stated that she began having more pain than usual around the first of April. After examining Claimant, the physician agreed that Claimant's condition was not work related and cleared her for "normal work."

Employer terminated Claimant on April 18, 2011, for misconduct by failing to report an on-the-job injury in violation of the employee handbook. Claimant filed for unemployment compensation, but her claim was denied on the ground that her knowing violation of the policy constituted misconduct in connection with her employment.

Claimant had a lumbar MRI on April 22, 2011. It showed

> a large inferiorly extravasated [protrusion of the disk material] L4-5 disk on the left side causing significant left L5 and S1 nerve root compression. At the disk level she has bilateral stenosis due to broad-based disk bulge and hypertrophy [enlargement of the posterior articular processes between adjacent vertebrae] of facet capsule. At L5-S1 on the right there is some lateral recess stenosis due to a combination of a focal disk bulge and hypertrophy of the facet capsule.

This was diagnosed as "severe degenerative disk disease." Claimant's 2008 MRI had also revealed lumbar disk disease at these levels with a significant disk bulge at L4-5.

On April 26, 2011, Claimant went to the office of the surgeon who had seen her in the emergency room. She told him that she injured her back in mid-March while shoveling potatoes at work. She also stated that she had been diagnosed with a ruptured disk in 2008, for which she had steroid injections. On May 9, 2011, the surgeon performed an L4-5 diskectomy with decompressions at both L4-5 and L5-Sl. After she awakened and reported symptoms, the surgeon performed a second surgery that day. On February 21, 2012, the surgeon performed an additional right L4-5 diskectomy and decompression.

3

At the hearing before the referee, Claimant presented expert medical testimony that her pre-existing disk herniation at L4-5 was aggravated by a work injury. Defendants presented expert medical testimony that "claimant still has no reasonable evidence of an industrial injury or aggravation to her pre-existing back condition." Based upon the evidence, the Commission found that Claimant had failed to prove she had an accident arising out of and in the course of her employment that caused her injury.

Claimant also argued that Employer was estopped from asserting that she did not suffer a compensable injury based upon its defense of her unemployment compensation claim. She asserted that by terminating her for misconduct for failing to report an on-the-job injury in violation of the employee handbook, Employer admitted that she had suffered a work-related injury. The Commission rejected that argument because Employer's defense of the unemployment claim was not based upon the acknowledgement that the claimed accident had actually occurred. It was based upon the failure to report an injury that Claimant contended had occurred.

As a result, the Commission denied Claimant's worker's compensation claim. She then timely appealed.

## II.
### Did the Commission Err in Denying Claimant's Assertion That Employer Is Estopped to Deny Her Claim?

Claimant contended that the doctrines of quasi-estoppel and judicial estoppel precluded Employer from contesting Claimant's assertion that she had suffered a compensable injury on or about March 16, 2011. "The doctrine of quasi-estoppel 'prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken.'" *Vawter v. United Parcel Serv., Inc.*, 155 Idaho 903, 910, 318 P.3d 893, 900 (2014). Claimant argued to the Commission in her post-hearing brief that quasi-estoppel applied because in the worker's compensation proceeding, "Defendants are adopting the position that Claimant did not experience work-related injuries in March of 2011," while in the earlier unemployment compensation proceedings Defendants took the opposite position and asserted "that Claimant suffered a work-related injuries [sic] in March of 2011." The Commission found that the

4

doctrine of quasi-estoppel did not apply because Employer did not take inconsistent positions in the two proceedings.

Claimant was terminated for violating the written company policy requiring her to "[i]mmediately report each on-the-job accident or injury (regardless of how minor it may be at the time) to a supervisor or manager, and to the Plant Nurse." The termination letter she received stated that she violated that policy as follows:

> On April 6, 2011, you reported to the emergency room of St. Luke's hospital. According to the doctor's report, you indicated that you suffered back pain that began 3 weeks prior while working in sanitation. Upon checking our records, you did not report this incident to a supervisor. We also found that you did not notify the Plant Nurse of this incident or that you were seeking medical treatment.

Claimant's claim for unemployment compensation was investigated by a claims examiner for the Department of Labor. The notes and determination made by the claims examiner were offered into evidence during the worker's compensation proceedings. The claims examiner's notes stated that the claims examiner had telephoned Claimant regarding her claim and during that conversation Claimant said that she never told the doctor that she "had gotten hurt at work"; that she never said anything to the doctor that she "had hurt my back at work"; and that she "knew that the injury was not work related, it was a prior injury that I might have aggravated."

The claims examiner then telephoned Employer. The claims examiner's notes reflect that Employer responded: "She went to the hospital on 04/06/11 for what she reported as a work related injury and we found out about the injury on 04/08/11 and suspended her that day, 04/08/11 until we conducted an investigation and terminated her on 04/18/11." The notes also stated that according to Employer, on April 8, 2011, the hospital and doctor had notified Employer of the work injury; that Employer asked Claimant about the report from the hospital and doctor; that she denied ever saying she had a work injury; and that Employer contacted the doctor, who was adamant that Claimant had told him she was injured at work and such statement was reflected in his notes.

The claims examiner then telephoned Claimant and read Employer's response to her. The claims examiner's notes reflect that the claims examiner asked if shoveling potatoes made Claimant's back sore, and Claimant answered, "Yes." The notes record that the claims examiner then asked if that soreness would be a work-related injury and Claimant's answer was, "Yes, I

5

guess now that I think of it, it was an injury at work." The claims examiner's notes state that in response to questions from the claims examiner, Claimant admitted knowing about Employer's policy requiring her to report all injuries no matter how small they might be, but Claimant felt at the time that she "only had a medical issue, not a medical injury" and that she "did not think that it was an injury, I just hurt it when I shoveled potatoes for 8 hrs."

The claims examiner determined that Claimant was ineligible for unemployment benefits because she was discharged for misconduct in connection with her employment. The claims examiner wrote that the relevant facts were as follows:

- The employer discharged the claimant for violation of policy citing she failed to report a work injury. They submitted documentation to support their statement.
- The claimant admitted that she was aware of policy and further maintains that she felt she had a medical issue, not a medical injury.
  The claimant's action was clearly a disregard of company policy of which she had been made aware. This disregard on the claimant's behalf is sufficient to establish misconduct.

The Commission held that Employer's positions in the two proceedings were not inconsistent. During the unemployment proceedings, Employer did not have to establish, nor did it contend, that Claimant had actually suffered an injury while working for Employer. It only asserted that if such injury occurred, as Claimant reported to the doctor, she failed to comply with Employer's policy requiring that she report it to a supervisor and the nurse. The Commission did not err in rejecting Claimant's quasi-estoppel argument.

Claimant also contends that the Commission erred in failing to apply the doctrine of judicial estoppel to bar Employer from disputing that Claimant suffered a compensable injury on or about March 16, 2011. She bases this contention upon the same facts upon which she based her argument for quasi-estoppel. "Judicial estoppel precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *Sadid v. Idaho State Univ.*, 154 Idaho 88, 96, 294 P.3d 1100, 1108 (2013). Even if Employer's position before the Commission had been different from Employer's position before the Department of Labor, "judicial estoppel does not preclude inconsistent positions taken before an administrative agency." *Id.*

**III.**

6

## Was the Commission's Decision Supported by Substantial and Competent Evidence?

"The burden of proof in an industrial accident case is on the claimant." *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 244, 766 P.2d 711, 714 (1988). "[C]ompensation for personal injury or death will be granted only if it be shown that an industrial accident has caused the affliction." *Tipton v. Jansson*, 91 Idaho 904, 907, 435 P.2d 244, 247 (1967). An "accident" is defined as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." *Spivey v. Novartis Seed Inc.*, 137 Idaho 29, 33, 43 P.3d 788, 792 (2002); I.C. § 72-102(18)(b) (1999).

An "injury" is defined as "a personal injury caused by an accident arising out of and in the course of any employment covered by the worker's compensation law." I.C. § 72-102(18)(a). The definition of "injury" is further restricted by Idaho Code section 72-102(18)(c), which states that the term "shall be construed to include only an injury caused by an accident, which results in violence to the physical structure of the body." "[A]ggravation of a pre-existing condition caused by repetitive motion does not become an accident simply because the claimant can locate the time period when the pre-existing condition became symptomatic." *Konvalinka v. Bonneville Cnty.*, 140 Idaho 477, 480, 95 P.3d 628, 631 (2004).

"In order to qualify as a compensable accident, a mishap or event must result in 'violence to the physical structure of the body.'" *Langley v. State, Indus. Special Indem. Fund*, 126 Idaho 781, 785, 890 P.2d 732, 736 (1995). A claimant has "the burden of proving both elements, the accident and its causation of the injury." *Tipton*, 91 Idaho at 907, 435 P.2d at 247. "A claimant must provide medical testimony that supports a claim for compensation to a reasonable degree of medical probability." *Langley*, 126 Idaho at 785, 890 P.2d at 736.

In this case, the Commission found that Claimant had failed to prove both that she had an accident and that such accident, if any, caused an injury. The finding that she failed to prove an accident was based upon her varying accounts as to when the onset of symptoms began. The finding that she failed to prove that she had an injury caused by the alleged accident was based upon the Commission's finding that Defendants' expert was more credible than Claimant's expert.

7

It is undisputed that in 2008 Claimant sustained a ruptured disk at L4-L5 while she was living in Arizona and that she was diagnosed with a ruptured disk at L4-L5 in 2011. The issue was whether she proved that in 2011 there was an accident that caused additional violence to the physical structure of her body. Claimant had the burden of proof on that issue. *Tipton*, 91 Idaho at 907, 435 P.2d at 247. "Proof of a possible causal link is insufficient to satisfy the burden. The issue of causation must be proved by expert medical testimony." *Hart v. Kaman Bearing & Supply*, 130 Idaho 296, 299, 939 P.2d 1375, 1378 (1997).

The parties offered opposing expert medical testimony, but the Commission found that Defendants' expert was more credible than Claimant's expert. Claimant argues that the Commission erred in so finding. "Because the Commission is the finder of fact, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous." *Henry v. Dep't of Corr*., 154 Idaho 143, 145, 295 P.3d 528, 530 (2013). "This Court does not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Clark v. Shari's Mgmt. Corp*., 155 Idaho 576, 579, 314 P.3d 631, 634 (2013). Because the Commission's decision is supported by expert medical testimony, it is not clearly erroneous. *Houser v. S. Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 444, 649 P.2d 1197, 1200 (1982). We therefore uphold the Commission's finding that Claimant failed to prove that she suffered an injury caused by the alleged industrial accident. We therefore need not address whether the Commission erred in finding that she failed to prove that she had an industrial accident as she alleged.


## IV.
## Was Claimant Denied Due Process?

Claimant contends that the failure of the Commission to rule in Claimant's failure demonstrates "a bias or prejudgment against Wilson, necessarily implicating her due process rights." She claims:

> As covered herein, the Commission's February 20, 2015, Decision and Order reveals repeated failures to make proper application of the law to the objective evidence. Similarly, the Commission arbitrarily failed to address properly noticed and litigated issues. Likewise, the Commission engaged in *sua sponte* interjection of defenses/theories that only served to advocate for Defendants. The Commission also engaged in derivative extrapolations which directly contravened controlling law and judicial mandates. This is further

8

compounded by the Commission's failure to address the preponderance of objective factual and medical evidence, along with employing *non sequitur* fallacies to accomplish such.

We will address each of these accusations. "Due process requires an opportunity upon reasonable notice for a fair hearing before an impartial tribunal." *Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 204, 280 P.3d 703, 707 (2012).

First, Claimant asserts that the Commission failed "to make proper application of the law to the objective evidence." The failure of an administrative agency to rule in favor of a party or to put less weight on the party's evidence than on opposing evidence is not a denial of due process.

Second, Claimant states that "the Commission arbitrarily failed to address properly noticed and litigated issues." The issue that the Commission failed to address was judicial estoppel, which, as stated above, does not apply in administrative proceedings.

Third, Claimant claims that "it was anomalous for the Commission to *sua sponte* interject an 'accident' theory into the quasi-estoppel 'injury' issue that was actually litigated." Claimant apparently refers to the Commission's statement that "[i]n defending the claim for unemployment compensation, Employer was not required to commit itself to the proposition that the claimed accident actually occurred as now alleged by Claimant." The fact that Claimant had a ruptured disk requiring surgery was not a disputed issue. What was disputed was whether her condition was caused by an accident arising out of and in the course of her employment with Employer.[1] In her post-hearing brief, Claimant asserted, "The doctrine of quasi-estoppel dictates that Claimant suffered compensable injuries *caused by the work-related shoveling accident* on or about March 16, 2011." (Emphasis added.) "An injury that is compensable under the Worker's Compensation Act (the Act) must have been caused by an accident 'arising out of and in the course of any employment' that the Act covers." *Kessler on Behalf of Kessler v. Payette Cnty.*, 129 Idaho 855, 859, 934 P.2d 28, 32 (1997). Thus, the issue was whether Defendant was estopped from disputing whether an industrial accident caused her condition, and the Commission correctly held that it was not.

---

[1] In their answer to Claimant's worker's compensation complaint, Defendants denied that the accident alleged in Claimant's complaint actually occurred and that her condition for which benefits were claimed was partly or entirely caused by an accident arising out of and in the course of her employment.

9

Claimant also asserts that "[e]ven a remedial review of the referee's proposed January 29, 2015, Findings and Recommendations reveal anything but impartiality and a palpable bias against Wilson" and that "the Commission did little more than sanitize the referee's more egregious *ad hominin* attacks against Wilson, while maintaining the implicitly biased, inappropriate conclusion and errors through its February 20, 2015, Decision and Order." Claimant has not pointed to anything in the record that would support the conclusion that there was bias or prejudice against her.

## V.
## Is Either Party Entitled to an Award of Attorney Fees?

Claimant requests an award of attorney fees pursuant to Idaho Code section 72-804. That statute "allows for an award of attorney fees on appeal where the employer or its surety unreasonably brought or contested a claim." *Morris v. Hap Taylor & Sons, Inc.*, 154 Idaho 633, 640, 301 P.3d 639, 646 (2013). Because Defendants prevailed on appeal, they did not defend this claim without a reasonable ground, and therefore Claimant is not entitled to an award of attorney fees under that statute. *Id.* at 641, 301 P.3d at 647.

Defendants seek an award of attorney fees against Claimant's counsel pursuant to Rule 11.2 of the Idaho Appellate Rules. The rule provides in part:

> The signature of an attorney . . . constitutes a certificate that the attorney . . . has read the notice of appeal, . . . brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If the relevant document is signed in violation of the rule, "the court, upon motion or upon its own initiative, shall impose upon the person who signed it . . . an appropriate sanction, which may include . . . a reasonable attorney's fee." I.A.R. 11.2.

The rule contains both a "frivolous filings" clause and an "improper purpose" clause, and a violation of either clause can result in a sanction under the rule. *Flying A Ranch, Inc. v. Bd. of Cnty. Comm'rs for Fremont Cnty.*, 156 Idaho 449, 453, 328 P.3d 429, 433 (2014). Although there does not appear to be an improper purpose in filing this appeal, whether the appeal was

10

frivolous is a closer question. A majority of the Court has determined that the sanction should not be imposed in this case.

**VI.**
**Conclusion.**

We affirm the order of the Industrial Commission, and we award Defendants costs, but not attorney fees, on appeal.


Chief Justice J. JONES, Justices BURDICK, W. JONES, and HORTON **CONCUR.**